# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Northern Division)

WILLIAM M. SCHMALFELDT
6636 Washington Blvd. Lot 71
Elkridge, MD 21075
    Plaintiff, Pro Se

    v.

WILLIAM JOHN JOSEPH HOGE III
20 Ridge Road
Westminster, MD 21157
    Defendant

ROBERT STACY MCCAIN
294 Burnside Drive
Falling Waters, WV 25419

NANCY GILLY
34 North Road,
Groton, CT 06340
    Defendant

PAUL H. LEMMEN
4071 76th Ave N, Apt 6,
Pinellas Park, FL 33781
    Defendant

BETTINA HAPER
234 Claremont,
San Antonio, TX 78209
    Defendant

CHRIS HEATHER
2830 Arlington Ave, Uppr,
Racine, WI 53403'
    Defendant

KYLE KIERNAN
LKA 6750 Hibiscus Ave S,
South Pasadena, FL 33707
    Defendant

Civil Action No. *CCB-14-1685*

FILED    ENTERED
LODGED    RECEIVED

MAY 27 2014

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

KIMBERLY DYKES
250c RR 6,
Eastman, GA 31023
    Defendant

STEPHEN R. SHEIKO
14804 Hancock Court,
Centreville, VA
    Defendant

PAUL KRENDLER
Anonymous Blogger,
Address Unknown
    Defendant

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND AND REQUEST FOR DECLARATORY JUDGEMENT

1.    Plaintiff William M. Schmalfeldt brings this complaint for damages against William Hoge and nine (9) others he recruited to defame, harass, and destroy Plaintiff's reputation, business and health. Mr. Hoge took a leadership position in this plan to damage, harm and even kill Plaintiff, who suffers from Advanced Parkinson's disease. He filed 367 criminal charges against Plaintiff, all which have been dismissed. Hoge forum-shopped until he found a judge who would issue a Peace Order against Plaintiff for "Tweeting" Hoge's Twitter name with the @ symbol. The judge admitted he had no concept of what Twitter was and stated that he was not bound by the Maryland Attorney General or Federal Court decisions holding that Twitter is not a direct communications platform and that "Tweets" are protected by the First Amendment.

2.    Defendant Hoge used the peace order to defame and mercilessly harass Plaintiff, recruiting his followers and others to do the same. Plaintiff brings this complaint for damages asserting the following torts: malicious prosecution, abuse of process, defamation, libel, harassment and intentional infliction

of emotional distress and conspiracy. Plaintiff is also seeking a Declaratory Judgment finding that the Maryland Peace Order statute, as applied to Plaintiff, is unconstitutional because it violates his First Amendment right to speech and amounts to prior restraint.

3. As a result of Defendants' willful disregard for the truth, their disregard for Plaintiff's heath, their willful destruction of Plaintiff's carefully maintained Internet reputation, and their willful interference with Plaintiff's ability to gain paid freelance employment and their interference with his attempt to sell his books, Plaintiff brings this complaint to recover damages inflicted by Defendants, defined below, based on their intentional and unlawful conduct in the following particulars: (1) malicious prosecution and abuse of process; (2) defamation, (3) harassment and intentional infliction of emotional distress.

### JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 USC 1332 (diversity of citizenship).

5. Venue is proper in the District of Maryland under 18 USC 1965 and 28 USC 1391, in that Plaintiff and Defendant Hoge reside in Maryland, while the other Defendants reside in diverse states, the injury to Plaintiff occurred in Maryland.

### PARTIES'

6. Plaintiff Schmalfeldt is a retired government employee who has suffered from Parkinson's disease for 14 years since being diagnosed in 2000. He rarely leaves his home due to the increased difficulty he has with movement, walking and balance. He resides at 6636 Washington Blvd., Lot 71, Elkridge,

Maryland with his wife, Gail. Despite his disability, he keeps himself busy by blogging at http://patriot-ombudsman.com and with an online radio station at http://brainslices.com.

7.      Defendant William John Joseph Hoge III resides at 20 Ridge Road, Westminster, Maryland. He is employed in some capacity involving "quantum engineering" but blogs daily on his "Hogewash.com" blog at http://hogewash.com.

8.      Defendant Robert Stacy McCain resides at 294 Burnside Drive, Falling Waters, WV. He is the head columnist of the eponymous Internet blog, "The Other McCain," located at http://www.theothermccain.com. He has written dozens of blog posts identifying Plaintiff, by name, as "Deranged Cyberstalker Bill Schmalfeldt."

9.      Defendant Nancy Gilly resides at 34 North Road, Groton, CT. She was an unsuccessful candidate for her local board of education in 2011. She Tweets and frequently comments on the Hogewash blog as "LibraryGryffon."

10.     Defendant Paul H. Lemmen's last known address (LKA) is . 4071 76th Ave N, Apt 6, Pinellas Park, FL He is unemployed, although much is written about his exploits as a military impersonator. He has a Wikipedia entry at http://en.wikipedia.org/wiki/Paul_H._Lemmen. He runs a blog called "Dead Citizens Society" and is a frequent commenter on the Hogewash blog.

11.     Defendant Bettina Haper resides at 234 Claremont, San Antonio, Texas. She is a right wing extremist agitator who tweets as either "Black Betty" or "Clare Fries". She is a frequent commenter on the Hogewash blog.

12.     Defendant Chris Heather resides at 2830 Arlington Ave, Uppr, Racine, Wisconsin. He is unemployed and Tweets under the name @Guntotingteabag,

@embryriddlealum, and numerous other so-called "sock puppet" Twitter accounts. He is a frequent commenter on the Hogewash blog.

13. Defendant Stephen R. Sheiko is a resident of 14804 Hancock Court, Centreville, VA where he is employed as a proposal manager for Salient Management Company. He tweets under his own name, and is a frequent commenter on the Hogewash blog.

14. Defendant Kyle Kiernan LKA is LKA 6750 Hibiscus Ave S., South Pasadena, FL . His Facebook page is https://www.facebook.com/kyle.kiernan.90. He is a frequent commenter on the Hogewash blog, and he tweets as @KyleKiernan.

15. Kimberly Dykes resides at 250c RR 6, Eastman, GA, tweets under the name of @Newagerain and calls herself "Rain" when she blogs on Hogewash.com

16. "Paul Krendler" is a pseudonymous blogger, whereabouts unknown, frequent commenter on the Hogewash blog. He also Tweets as @brainsrfood.

### Factual Allegations

17. Defendants are all followers of each others' blogs and Twitter accounts. They communicate to each other via these blogs and Twitter account, forming an interstate network for their defamatory and libelous claims about Plaintiff.

18. Defendants have worked in concert over time to totally destroy Plaintiff's online reputation for becoming involved in reporting about Defendants McCain and Hoge, *inter alia,* being sued by Brett Kimberlin in state and federal court for a variety of torts and civil RICO charges.

19.     Defendants have lied about Plaintiff's previous investigative stories, painting him as an obsessive stalker.

20.     Defendant Hoge was successful on his third attempt at securing a Peace Order against Plaintiff because Plaintiff continued to "@mention" Hoge in Plaintiff's Tweets.

21.     An "@mention" is when one Twitter user identifies another Twitter user by placing the @ symbol in front of that person's Twitter handle. If a person "follows" a Twitter user, this ensures the recipient will receive the message in his or her front page timeline. If a person does not follow a Twitter user, the recipient will find the message in his or her "Mentions" folder, not on the front page. If the person has "blocked" the sender, the message will not show up at all in the Twitter user's account.

22.     On June 14, Defendant Hoge falsely convinced Judge Thomas Stansfield of the Carroll County, Maryland, Circuit Court, where Hoge was appealing the rejection of his peace order by the Carroll County District Court, the "blocking" Plaintiff would be the same as disabling his home Internet functionality or changing his home telephone number. The judge granted the peace order and extended it for six months in December 2013.

23.     Between Feb. 15, 2013 and April 2014, Defendant Hoge filed 367 misdemeanor criminal charges against Plaintiff, all of which were dismissed by States' Attorneys in Carroll and Howard County, Maryland.

24.     Defendant Hoge continues to defame and libel Plaintiff on a daily basis on his Hogewash blog, encouraging his readers to do the same.

6

25.     Defendants have conspired to block publication of at least three self-published books, written by Plaintiff, outlining Plaintiff's experience in reporting this story. The books were killed by Defendants filing false DMCA complaints with the self-publishing platforms, demanding removal.

26.     Defendants Gilly, Grady, Lemmen, Haper, Heather, Kiernan, Dykes, Heather and "Paul Krendler" are all followers of the blogs of Defendants Hoge and McCain and communicate and conspire with each other on a regular basis in the blog comments and on Twitter.

### FIRST CLAIM FOR RELIEF
### Malicious Prosecution and Abuse of Process

27.     Defendant Hoge inserted himself into an ongoing controversy between Plaintiff and other right wing bloggers after two of these bloggers filed harassment charges against Plaintiff in Howard County, MD. After hearing Plaintiff say "Beware the Ides of March" on his Blog Talk Radio show on or about Feb. 13, 2013, Defendant Hoge decided that constituted a death threat against him. Hoge admits he attempted to file charges against plaintiff in Howard County but was told by the Court Commissioner for the District Court that he needed to file in home county, Carroll County.

28.     On Feb. 15, Defendant Hoge convinced a Carroll County District Court Commissioner to file three charges against plaintiff as a result of the perceived threat. He charged harassment, electronic mail harassment, and a baffling charge of unauthorized access to a computer, falsely claiming that Plaintiff had somehow commandeered a computer IP address in Kansas City, MO, and then sent threatening messages to Hoge from that purloined IP address.

29.     The three charges were dismissed by the Carroll County State's Attorney on April 17, 2013.

30.     On February 21, Defendant Hoge undertook his first attempt at getting a Peace Order against Plaintiff. His request was denied in the Carroll County District Court on February 28, 2013 for lack of clear and convincing evidence of prohibited conduct. He immediately appealed.

31.     While waiting for word on the appeal of his first denied Peace Order, On March 18, 2013, Defendant Hoge tried again by requesting a different Peace Order against Plaintiff in Carroll County District Court. This was also denied on March 25, 2013 for lack of clear and convincing evidence of harassment.

32.     On the same day he filed his second attempt at getting a Peace Order, Defendant Hoge also convinced a Carroll County Court Commissioner to file a charge of harassment against Defendant. This 4th criminal charge was dismissed by the State's Attorney on April 17, 2013.

33.     On March 20, while the temporary Peace Order Defendant Hoge received on March 18, 2013, was still in effect, Defendant Hoge convinced a Carroll County Court Commissioner to file a charge stating Plaintiff had failed to comply with the temporary peace order. This 5th charge against Plaintiff was dismissed by the State's Attorney on April 17, 2013

34.     On June 9, Defendant Hoge was awarded his Peace Order on appeal during a hearing before Judge Thomas Stansfield of the Carroll County Circuit Court. Hoge maintained that the act of "blocking" Plaintiff's Twitter account would be the same as disabling a portion of his Internet functionality and the same as having to

change his telephone number to avoid telemarketers. After saying on the stand that he had no idea what Twitter was, how it worked, or what it was for, and after hearing Federal Case law and the Maryland Attorney General's written opinion that Twitter is not an Internet platform that can be used for harassment, Judge Stansfield granted the order.

35. On July 8, 2013, Defendant Hoge convinced a Carroll County District Court commissioner to file five (5) charges alleging Plaintiff had violated the Peace Order. The charges were dismissed by the State's Attorney on Sept. 11, 2013.

36. On August 5, 2013, Defendant Hoge convinced a Carroll County District Court Commissioner to file three (3) charges alleging Plaintiff had violated the Peace Order. The charges were dismissed by the State's Attorney on Sept. 20, 2013.

37. On November 8, 2013, Defendant Hoge convinced a Carroll County District Court Commissioner to file one charge of Electronic Mail Harassment, one charge of Harassment, and thirty-six (36) charges alleging Plaintiff had violated the Peace Order. The charges were dismissed by the State's Attorney on January 29, 2014.

38. On November 12, 2013, Defendant Hoge convinced a Carroll County District Court Commissioner to file one hundered ninety-eight (198) charges alleging that Plaintiff had violated the Peace Order. This time, an arrest warrant was issued for the Plaintiff. When the Carroll County deputy sheriff called Plaintiff to arrange Plaintiff's surrender and heard that Plaintiff was a 58-year old man suffering from advanced stage Parkinson's disease, the warrant was rescinded and

9

Plaintiff was served by summons instead. The charges were dismissed by the State's Attorney on January 29, 2014.

39.     On November 15, 2013, Defendant Hoge convinced a Carroll County District Court Commissioner to file eighty-eight (88) charges alleging that Plaintiff had violated the Peace Order. The charges were dismissed by the State's Attorney on January 29, 2014.

40.     On November 15, 2013, Defendant Hoge also convinced a Carroll County District Court Commissioner to file an additional twenty-nine (29) charges alleging Plaintiff had violated the Peace Order. The charges were dismissed by the State's Attorney on January 29, 2014.

41.     On December 9, 2013, Plaintiff Hoge sought a six-month extension of his original peace order. Using the same arguments as in June, Hoge convinced the same judge that good cause existed to expand the Peace Order until June 9, 2014.

42.     Having apparently worn out his welcome at the Carroll County State's Attorney's office, Defendant Hoge traveled to Howard County on April 1, 2014, and convinced a Howard County District Court Commissioner to file a charge alleging that Plaintiff had violated the Peace Order. The charges were dismissed in short order by the Howard County State's Attorney on April 15, 2014. This was the final of the 367 criminal charges brought against Plaintiff by Defendant Hoge.

43.     Defendant Hoge was well aware of Plaintiff's deteriorating health during this entire period. Even before filing his first charge, he knew that Plaintiff had Parkinson's disease and that unnecessary stress causes the disease to progress at a more rapid rate.

44. Plaintiff maintains that the malicious prosecution and abuse of process in which Defendant Hoge engaged was undertaken for no other reason than to harass plaintiff, to punish him for supporting the man who was suing him in state and federal court, and the intended end result was to so worsen the Plaintiff's health that he would either die or become totally disabled.

## SECOND CLAIM FOR RELIEF
### Defamation and Libel

45. Defendant McCain is a friend of Defendant Hoge. He is also a co-defendant in a pair of lawsuits filed by Brett Kimberlin in state and federal court. Defendant McCain, more than anyone else in this matter, is responsible for taking Plaintiff's once-sterling reputation as a writer and a fund-raiser for Parkinson's disease research and doing so by creating a narrative that Plaintiff is a "deranged cyberstalker." Defendant McCain began this campaign in November 2012, about the same time as others involved in this conspiracy began to libel and defame Plaintiff.

46. Defendant McCain claims readership in the tens of thousands on his "The Other McCain" blog. His Twitter account has 79,000 followers. When McCain puts out the word, it spreads exponentially throughout the conservative blogosphere. This is a sampling of McCain blog post headlines

Monsters on the Internet: Sociopathic
Sadism and Bill Schmalfeldt's Madness, 11/4/2012

The Dishonesty of Bill Schmalfeldt, 11/25/2012

J    Bill Schmalfeldt Begins
Cyberstalking Aaron Walker, 12/9/ 2012

Deranged Cyberstalker Bill Schmalfeldt:
Charged with Deranged Cyberstalking, 2/14/2013

Dishonest Bill Schmalfeldt Got Banned

11

From Daily Kos for Anal Rape 'Satire', 2/20/2013
The Satire was about heterosexual male reactions to Gay relationships

Peace Order Against Bill Schmalfeldt: A
Defeat for the 'Troll Rights' Movement, 6/14/2013

Imaginary 'Rights' You Don't Have, You
Sad and Disgusting Troll, Bill Schmalfeldt, 6/16/2013

Deranged Cyberstalker Bill Schmalfeldt:
Inspires Epic 'Downfall' Parody Video, 7/12/2013

Deranged Cyberstalker Bill Schmalfeldt:
Bats, Belfry, Some Assemby Required, August 7, 2013

Deranged Cyberstalker Bill Schmalfeldt:
Continues his Obsessive Cyberstalking, 7/19/2013

Bats, Belfry, Some Assemby Required, August 7, 2013

Epic New Failure: Daily Kos Re-Banishes
Deranged Cyberstalker Bill Schmalfeldt:, 7/22/2013

Bats, Belfry, Some Assemby Required, August 7, 2013

Deranged Cyberstalker Bill Schmalfeldt:
Bats, Belfry, Some Assemby Required, August 7, 2013

Meltdown Monday: Does Bill Schmalfeldt
Need a Brief Vacation at Spring Grove? 8/15/2013
Spring Grove is our local mental health institution

Deranged Cyberstalker Bill Schmalfeldt:
Bats, Belfry, Some Assemby Required, August 7, 2013

Deranged Cyberstalker Bill Schmalfeldt
and His Massive Mountain of Failure, 9/3/2013

Deranged Cyberstalker Bill Schmalfeldt:
Why Can't He Explain His Cyberstalking?, 9/10/2013

Could Schmalfeldt Get Any Crazier?, 9/14/2013

Deranged Cyberstalker Bill Schmalfeldt
Often Wrong, But Never in Doubt, 9/17/ 2013

12

The Monster Bill Schmalfeldt, 9/21/2013

This was McCain's first use of a photo of Plaintiff taken three days after brain surgery, his face swollen, with a crazed look on his face. He was posing for his wife. But McCain dishonestly cropped out the scars on Plaintiff's head to make him look deranged, to fit the narrative.

Deranged Cyberstalker Bill Schmalfeldt
Returns to Examiner as 'Lester Klemper', 9/22/2013

Bill Schmalfeldt Axed by Examiner (Again)
Vows Retaliation on His Enemies, 9/23/2013

The Latest Bill Schmalfeldt Meltdown, 9/30/2013

Bill Schmalfeldt: Sadism, Sodomy and
Other Bizarre Mental Aberrations, 9/30/2013

Deranged Cyberstalker Bill Schmalfeldt
Humiliates Himself in Maryland Court, 10/16/2013

Bill Schmalfeldt Lies Again, 10/17/2014

Deranged Cyberstalker Bill Schmalfeldt
Clearly Knows He Is Doomed to Hell, 10/18, 2013

Bill Schmalfeldt's Dishonest Denials (and
Where the Trail of Evidence Leads), 10/24/2013

Bill Schmalfeldt Lies to @SilverbergDave:
Failure and the Exact Opposite of Truth, 10/30/2013

Deranged Cyberstalker Bill Schmalfeldt
Will Face Contempt of Court Charges? 11/9/2013

A Maryland Criminal Arrest Warrant Was
Issued today for Bill Schmalfeldt, 11/12/2013
        It was rescinded an hour later. He never reported that

Be Thankful for Bill Schmalfeldt, 11/27/2013
        This story includes filthy cartoons about me

Bill Schmalfeldt's Clown Show, and a
Certain Dog That Has Not Barked, 1/4/2014

Deranged Cyberstalker Bill Schmalfeldt

Insinuates Corruption in Carroll County, 1/5/2014

Sociopathic Sadist Bill Schmalfeldt Vows:
One Way or Another, They Will Pay', 1/7/2014

Bill Schmalfeldt Continues His Insane Investment
In Brett Kimberlin's RICO Suit, 2/3/2014

Bill Schmalfeldt: CEASE AND DESIST, 2/23/2014
This story describes my lack of principles.

47.     When Defendant McCain tweets something to the right wing
blogosphere, it is taken as gospel, and the people who comment on his blog pass the
information on to their own blogs, and the next thing you know a search of Google
that used to reveal Plaintiff's history with Parkinson's disease research and
fundraising now comes back with link after link of "Deranged Cyberstalker Bill
Schmalfeldt." Plaintiff can not find employment, still having skill as a writer, because
employers do a Google search before hiring.

48.     Defendants McCain and Hoge share a large portion of their
readership. They refer to each other from time to time. Defendant Hoge has used his
Blogwash.com blog as a vehicle to further the meme that Plaintiff is a deranged
cyberstalker.

49.     Time and time again, especially since being awarded the six-month
extension to his peace order in December 2013, Defendant Hoge has used his blog as
a weapon to defame, libel and harass Plaintff, knowing that the peace order
prevented Plaintiff's direct reply to the defamation, knowing that the stress of it all
caused Plaintiff's Parkinson's disease to deteriorate at a more rapid rate than it
would on its own.

14

50. In a blog post dated September 30, 2013, Defendant Hoge assists the

Court by providing links to a number of times he has libeled and defamed Plaintiff.

http://hogewash.com/2013/09/30/billschmalfeldts-whoppers/

51. Here are some of the posts here at *Hogewash!* over the last two

months which document lies from Bill Schmalfeldt.

Another Whopper from #BillSchmalfeldt
#BillSchmalfeldt and the Commandments
#BillSchmalfeldt's Spin Cycle
#BillSchmalfeldt: Wronger Than Wrongest
Maryland v. #BillSchmalfeldt
#BillSchmalfeldt and Tetyana's Fund
#BillSchmalfeldt and Probable Cause
#BillSchmalfeldt and the DMCA, Again
Does #BillSchmalfeldt Wear Nomex Depends?
Team Kimberlin Post of the Day
#BillSchmalfeldt Tells Another Lie

52. As a result of Defendant Hoge's incessant harassment, defamation and

libeling of Plaintiff, he has been subjected to a large amount of hate mail both via his

e-mail accounts and via his blog comment section.

53. One such series of threats to my e-mail inbox came from an

anonymous user identifying herself as PEMason54, who has since vanished from the

scene. The actual threats can be seen on my letter to Judge Paul W. Grimm, which I

filed in connection with Brett Kimberlin's lawsuit against Defendant Hoge and

others.

http://www.scribd.com/doc/209036877/ECF-89-Redacted

February 18, 2014, from "Pete Mason" (anonymized address)" – Hi, douche
nozzle. GoOd to see YoU ArE involving YoUrSelf in this case. Hopefully, you'll
be added as a defendant when your butt buddy is thrown out of court with
the judges laughing. Speaking of Laughing, I see the retard grows strong in
your line, your brother and Gail being two other fine examples. I mean, I'd

15

have to be pretty desperate to hit that, and to be honest, your doggy looks more attractive than her. Cheer up, douche nozzle. Someone will get you soon enough.

February 18, 2014, from same individual. – How'd you like to come home from your next dr appointment to find one of your mutts gutted, intestines spread all over your poop-filled bed? Keep it up. It will happen.

54.    This individual was a frequent commenter on Defendant Hoge's blog until shortly after this incident was reported to law enforcement. The reaction from the other defendants who frequent Defendant Hoge's blog is that Plaintiff created the threatening e-mails and sent them to himself.

http://hogewash.com/2014/02/18/in-re-docket-item-63/

http://hogewash.com/2014/02/18/are-you-pondering-what-im-pondering-542/

http://hogewash.com/2014/02/14/for-the-record/

## THIRD CLAIM FOR RELIEF
## Harassment and Intentional Infliction of Emotional Distress

55.    The harassment, defamation, libel and intentional infliction of emotional distress which continues to exacerbate and accelerate the progression of Plaintiff's Parkinson's disease continues on a daily basis on Defendant Hoge's blog and on Twitter and a slightly-less regular basis on Defendant McCain's blog.

56.    Defendant Hoge's blog is devoted largely to his ongoing lawsuits filed by Brett Kimberlin. However, it seems that even an innocent blog post with a non-sequitur reference to the old "Pinky and the Brain" cartoon can be turned into an occasion to harass Plaintiff.

57.    For example, on May 14, 2014, Defendant Hoge posted the following blog at http://hogewash.com/2014/05/14/are-you-pondering-what-im-pondering-709/

"Are you pondering what I'm pondering? I think so, Brain ... but arugula-flavored chewing gum?"

58. This seemingly innocent post was the occasion for 90 comments,

many of which were harassing, defamatory, false and libelous, directed at Plaintiff.

59. The second comment in the thread comes from Defendant Haper, who asks:

> "Can someone answer a few serious questions? If a certain person is who is accusing another individual of filing a false DMCA takedown notice, has themselves filed a couple false DMCA takedown notices ( one back in July 2013, Jabba the Hut photo), what's his potential civil liability? And did he perjure himself? Because I know the statute of limitations hasn't run. So the owner of a certain blog could easily pursue the matter."

> Later in the thread, Defendant Krendler replies:"It looks like the question has been answered on point below, but I must say I am feeling absolutely zero risk regarding the blog post which led to the DMCA takedown. There is an electronic agreement between myself and our host (Defendant Hoge) and it was a value-for-value exchange. I can also say that, *almost* purely for spite, my proceeds from the deal were donated to the National Parkinson's Foundation. There is not a single doubt in my mind that both John and I are safely protected by that agreement. And besides the actual material terms of the deal, I got something more, which is only of value to me. I'm feeling fully armored right about now. There's not a single thing false about that takedown. Let him come."

> Defendant Heather commented: "The tremulous pile of goo that will remain nameless, is under the impression that his county's S.A. will be coming after me for a takedown of a pic in one of his fliers...I mean, books. I invite him to pursue that course with the utmost vigor. Since I had absolutely zero to do with it, I will be happy to be first in line to point and laugh at him. AGAIN. It is only a shame that the serial adjudicated harasser has already collected my state's restraining order. I would love to help him with his collection."

> (Plaintiff did not receive a "restraining order" from the state of Arizona. It was an injunction against harassment, and it did not mention "Heather.")

> Defendant Embryriddle commented further: "A civil judgement would be meaningless. I mean, who wants a FUGGIN' trailer? AMIRIGHT?"

> To which Defendant Lemmen replied, "True. Especially one that must be fumigated!"

17

This exchange refers to the fact that Plaintiff lives in a 19x70-foot mobile home.

Defendant Haper comments: "A certain adjudicated harasser is upset that his latest "book" was taken down for yet another DMCA violation. This one was because he posted a picture of a baby. The picture belongs to an individual whom this adjudicated harasser has been...harassing. Anyway, he is now claiming that the individual filed a "perjurious" DMCA take down notice because the individual doesn't own the picture of his baby (the picture was allegedly taken in the hospital by a staff member and was billed to the parents). The problem with the adjudicated harasser's argument is that everything points to the individual (parent) owning the photo. And the adjudicated harasser is guilty of filing false DMCA take down notices himself. Which would put him in the precarious position of being sued and prosecuted for the very things he is vowing to go after this individual for. My original question was more about why this adjudicated harasser would do this to himself? But truthfully...I think we all know."

Defendant Heather comments: "No wonder his family hates him, huh?"

60.     The harassment and intentional infliction of distress did not only occur in the comment section of Defendant Hoge and Defendant McCain's blogs. It carried over to the Twitter accounts of the commenters.

61     On Mother's Day, May 4, 2014, knowing that Defendant Heather was using a photo of Plaintiff's deceased mother as his avatar, Defendant Krendler tweeted to Defendant Heather and Defendant Hoge, "I'm looking for a special (avatar) for Mother's Day – Any Suggestions?"

62.     Defendant Haper responded to the above named Defendants, "Marilynn's squack waste thinks you are not clever. Clever enough to thwart his theft, though." (Marilynn is the first name of Plaintiff's deceased mother.)

63.     Defendant Heather tweeted on May 14, 2014: @brainsrfood (Defendant Paul Krendler) @LobotomyRadio (Plaintiff) Wait until he finds the pic of Marilynn, with pennies on her eyes, blowing a horse. GOOD TIMES!!!

18

64.     Defendant Gilly tweeted to Defendant Krendler, Defendant Heather, and Defendant Lemmen, "Fact checking Bill's latest is fun. So many lies!" She further tweeted to the above Defendants, "Let's see, how many times has he "doxed" @embryriddlealum and Jerry Fletcher? And how many errors?" "Doxing" is a term used when referring to an individual, publishing private information, not publicly available, on the Internet.

65.     Defendant Dykes responded to Defendant Gilly, Defendant Krendler and Defendant Heather, "Oh, but to hear Twinkie tell it, he's NEVAH wrong. Even when changing his claims, repeatedly.

66.     Defendant Gilly responded to the above named Defendants, "Bill is a model of probity to hear him tell it. I'd say he was a lying gasbag of an arsehole."

67.     Defendant Krendler responded to all above, "I respectfully disagree. He's a poopstain that needs to be shoved back up the arsehole."

68.     Defendant Gilly responded to all above, "But he's such an inflated one, I'm not sure we'd be able to get it back in."

69.     Defendant Heather tweeted on May 15, 2014: "Can it truly be called a blog if none of your "articles" have comments??? Kooky

70.     Defendant Sheiko responded: Can we call his sweaty-palmed DOOM rants "masturbation fantasies" if he hasn't touched/seen his inoperable tool in years?

71.     Defendant Heather responded: "The Bobber misses it to (sp)." "The Bobber is Plaintiff's nickname for his identical twin brother, Bob, who died of a stroke on Msrch 19, 2004.

19

72.     On May 5, Defendant Heather tweeted to Defendant Krendler and Defendant Hoge, "His dick dents are like a race track." This refers to the pair of longitudinal scars on Plaintiff's head that are a result of his undergoing experimental deep brain stimulation surgery in 2007 to see if the procedure would be safe to perform on people in the earlier stages of Parkinson's disease.

73.     Defendant Nancy Gilly tweeted on May 15, 2014 to Defendants Krendler, Heather, Haper and Lemmen: "It's down b/c I sent a DMCA for using my photo." She is referring to getting one of Plaintiff's self-published books removed from the shelves based on a false claim under the Digital Millennium Copyright Act (DMCA) ,which will be discussed later in this complaint.

74.     Defendant Gilly continued her tweet to the same list of defendants: "The paper whose screen shot it was not amused too

75.     Another Twitter user responded to Defendant Gilly, Defendant Krendler, Defendant Heather, Defendant Haper and Defendant Lemmen "He's not real good at this stuff, is he?

76.     Defendant Sheiko responded to Defendants Gilly, Krendler, Dykes, Heather and Lemmen: "What stuff? Not stealing shit?"

77.     Defendant Heather responded to the above-mentioned defendants, "He's good at stealing shit." He then responded to himself and the above defendants, "...just not getting away with it."

78.     On May 16, Defendant Gilly tweeted to Defendants Sheilo, Krendler, Hoge, Heather and Haper, "I guess Bill thinks putting an address in a book is OK because he found (continued on following tweet) it online. Goose, meet gander." She

posted a link to a screencap she posted online containing Plaintiff's name and home address.

79. Defendant Gilly continued to tweet to the above Defendants, "and I would never, ever suggest that people use it to sign him up for (continued on following tweet) spam, or magazines or stuff, because that would be wrong.

80. Defendant Heather responded to Defendant Gilly and all others above. "I'm sure he'll enjoy the telemarketers. How could he NOT? Gail sighs..." "Gail" is Plaintiff's wife.

81. On May 17, 2014, Defendant Sheiko tweeted to Defendants Heather, Krendler, Gilly, Lemmen and Haper regarding Plaintiff's being suspended from Twitter. "I'm shocked he's not back here yet." He further tweeted to the same individuals, "He must be on a very short leash."

82. After another tweeter suggested Plaintiff's wife might be keeping him offline, Defendant Sheiko responded to all, "That's my guess. On his own he (continued on following tweet) couldn't stay away (continued on following tweet) He lives for these ass-whippings. (continued on following tweet) Same as bragging of his cuckolding. (continued on following tweet) & whining about Mom & Bobber. Defendant Sheiko refers to the fact that Plaintiff's ex-wife had become a Twitter friend with many of the defendants. Plaintif has remarked that she cheated on him several times during their marriage. Defendant Sheiko also refers to Plaintiff's demand that defendants cease defaming his deceased mother as "whining."

83. The schoolyard bullying and taunts above have become part of the Internet record and can be seen by anyone doing a search for Plaintiff's last name

21

online. These Tweets were intended to mock Plaintiff, to lower his standing in the community. They contain false allegations of wrongdoing and are libel per se. They have had the net effect of causing extreme emotional stress to Plaintiff, worsening his Parkinson's disease symptoms.

84.     Another component in this intention infliction of emotional distress is the fact that Defendants have successfully conspired to keep Plaintiff from self-publishing books about the experience. By filing false DMCA takedown complaints with the self-publishing platforms, Lulu.com, CreateSpace.com, Amazon, Smashmouth and Kindle, the Defendants have interfered with Plaintiff's ability to engage in commerce by the sale of his lawfully-written books, thereby interfering with Plaintiff's First Amendment Rights to Free Expression.

85.     Plaintiff's first book on the subject was aptly titled, "My Slow, Journalistic Death." It was published as an e-book on Smashwords.com and Amazon Kindle. Defendant Hoge filed a DMCA takedown complaint claiming I used one sentence from his blog without permission. Although such use surely falls under the "Fair Use" terms of the U.S. Copyright Laws, Smashwords and Amazon immediately removed the book from sale.

86.     Plaintiff sought to remedy the problem by re-publishing the majority of the book under a new title, "Intentional Infliction." In this book, he used a portion of Defendant Krendler's blog, which can be seen here.

http://thinkingmanszombie.wordpress.com/2014/04/23/we-can-write-whatever-we-want-right/

87.     The source of the material was cited and linked and the material was used under Fair Use terms of the US Copyright Act.

88.     Defendant Hoge contacted Defendant Krendler on his Twitter account and asked Krendler to "follow" him on Twitter so they could exchange direct messages.

89.     On April 30, 2014, Plaintiff was notified by CreateSpace, the self-publishing platform on which "Intentional Infliction" was listed, that they were removing the book from availability because of a Digital Millennium Copyright Act takedown request by Defendant Hoge, who claimed he had purchased "the world book and e-book rights" to Defendant Krendler's blog post. As Hoge has a peace order in place against Plaintiff, Schmalfeldt is unable to contact Defendant Hoge to request a copy of the contract executing the transfer of rights from Defendant Krendler to Defendant Hoge. Defendant Krendler refuses to provide any proof, despite several requests from Plaintiff.

90.     Plaintiff tried to remedy this problem by paraphrasing from the blog instead of reprinting it. He released the book under the title "Cyber Ins@nity: Who Protects the Indigent Disabled Adult from Cyber Bullying"? This time, the book was killed when Defendant Gilly filed a false DMCA claim that she owned a photo published in October 2011 in a Groton, CT, news paper published online. It was a candidate's profile in which Gilly ran as an unsuccessful candidate for a Board of Education seat, and was used under fair use terms. Gilly filed a false DMCA complaint with Lulu.com and CreateSpace.com, which resulted in the book being pulled from availability across the Internet.

91.    Plaintiff maintains the reason these defendants removed these books from public availability has nothing to do with privacy concerns or copyright ownership. Plaintiff maintains that Defendants are embarrassed by their conduct and do not want their behavior to become part of the public record.

92.    On May 17, 2014, Defendant Kyle Kiernan attempted to post a comment on Plaintiff's Patriot Ombudsman blog. It left a pingback to Defendant Kiernan's own blog, http://kylekiernan.wordpress.com/. On that blog, Defendant Kiernan seems devoted to libeling, defaming and harassing defendant with such entries as  http://kylekiernan.wordpress.com/2014/05/17/substantia-nigra/ ("substantia nigra" refers to the dopamine producing brain cells that die, causing Parkinson's disease), this, http://kylekiernan.wordpress.com/2014/05/08/good-times/,  this (a veiled attack on Plaintiff's writing)

http://kylekiernan.wordpress.com/2014/04/19/vastly-better-than/,  a fixation on Plaintiff's income taxes, http://kylekiernan.wordpress.com/2014/04/05/gosh-that-sure-proves-the-point/, and this, where he brags about his ability to get Plaintiff fired from part time freelance writing gigs.

http://kylekiernan.wordpress.com/2014/03/02/examiner-ejection-seat/ Nearly the entire blog is devoted to libeling and defaming Plaintiff.

93.    Defendant Kiernan claims that he is not the Kyle Kiernan who has the Facebook page Plaintiff refers to in Paragraph 14. He has, however, volunteered in the past to "contact" this "actual "Kiernan" with the criminal record and offer to assist his travels to Maryland so he can "deal with" Plaintiff.

24

94.     Defendant Lemmen's main purpose seems to be fitting with his reputation as a criminal impersonator. He tends to repurpose the blogs of other Right Wing Extremists, calling for the execution of "constitutional traitors." Most of his Twitter posts are retweets of posts by the other Defendants in this case. On the rare occasion in which he posts an original thought on Hogewash.com, it tends to run along the lines of calling Plaintiff a heretic

http://hogewash.com/2014/05/03/what-would-jackasses-do/#comments Plaintiff's alleged emotional immaturity,

http://hogewash.com/2014/04/22/enough-already/#comments , accusing Plaintiff of inviting his own death threats, http://hogewash.com/2014/04/20/team-kimberlin-post-of-the-day-415/#comments, accusing me of falsifying my tax returns, http://hogewash.com/2014/04/14/are-you-pondering-what-im-pondering-648/#comments, and Plaintiff's "delusions of adequacy". http://hogewash.com/2014/04/14/are-you-pondering-what-im-pondering-648/#comments

## INJURY

95.     As a direct and proximate result of Defendants' willful, knowing and intentional acts as set above, Plaintiff has suffered injury to his name, health, reputation, and ability to earn income, including but not limited to, being falsely labeled as a "deranged cyber stalker," a "serial harasser", a liar, and a thief. This resulted in Plaintiff having to spend countless hours, days and weeks defending against the false narratives, worrying about the 367 criminal charges filed against him, emotional harassment caused by death threats via e-mail and Twitter, loss of

the ability to find part time work as a writer, and damage to Plaintiff's health due to the intentional infliction of stress caused by the constant stress, defamation, libel and harassment.

## PUNITIVE DAMAGES

96.    The actions of Defendants set forth in this complaint demonstrate an unbelievable and incomprehensible amount of malice against someone the vast majority of these Defendants has never met. The egregious conduct, insult and perverse gratification and glee seen in the writings of the Defendants as they celebrate each blow delivered against Plaintiff shows a level of maliciousness, spite, ill will, vengeance and deliberate intent to harm Plaintiff, or, given the largest benefit of the doubt possible, at the very least a reckless disregard for the wrongfulness of their actions and their harmful effects on Plaintiff.  Defendants either do not believe Plaintiff has Parkinson's disease, or they don't care that they are shortening his life by continuing to stress his life with their false accusations, which become part of the "official record" of the Internet. Accordingly, Plaintiff requests an award of punitive damages beyond and in excess of those damages necessary to compensate Plaintiff for injuries resulting from Defendants; conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

- Compensatory damages and consequential damages in an amount exceeding $75,000;
- Punitive damages as applicable to punish Defendants' reprehensible and abhorrent conduct to prevent future occurrence;

26

- An order enjoining Defendants from engaging in future tortious conduct against Plaintiff;

- An order requiring Defendants to remove any defamatory, libelous statements made about Plaintiff from blogs or media over which they have control;

- An order requiring Defendants to purchase Internet ads on Google, Bing, Yahoo and other Internet search engines, using wording approved in advance by Plaintiff, admitting their complicity with fouling Plaintiff's reputation online and setting the record straight about Plaintiff's actual character;

- An order requiring Defendants to purchase full page ads in the Sunday editions of the New York Times, Washington Post, Chicago Tribune, and Milwaukee Journal-Sentinel as well as on their online editions,, using wording approved in advance by plaintiff, apologizing for defaming Plaintiff and taking full responsibility for the destruction of Plaintiff's online reputation.

- For equitable relief as appropriate pursuant to applicable law, including but not limited to issuing a temporary restraining order, a preliminary injunction and a permanent injunction that bars Defendants from retaliating against Plaintiff or any of his family members or friends in any way for Plaintiff's bringing this action;

- Costs and fees incurred in the prosecution of this action, and

- Further relief as this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Schmalfeldt hereby demands a jury trial of all issues in this action triable as of right by a jury.

Respectfully submitted,

May 20, 2014

William Matthew Schmalfeldt-pro se
6636 Washington Blvd., Lot 71
Elkridge, MD 21075
410-206-9637
e-mail bschmalfeldt@comcast.net